**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

ALEJANDRO GIAN HURTADO HUAMAN,

Petitioner,

v. Case No. 2:26-cv-2130-MSN-tmp

CHRISTOPHER BULLOCK,

Respondent.

---

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

---

Petitioner, Alejandro Gian Hurtado Huaman, is an alien detained at the West Tennessee Detention Facility. Petitioner filed a Petition for Writ of Habeas Corpus (ECF No. 1, "Petition"), seeking release on his own recognizance or, alternatively, an individualized bond hearing before an immigration judge. (*Id.*) For the reasons below, his Petition is **DENIED**.

**BACKGROUND**

Petitioner is a citizen of Peru. (ECF No. 12 at PageID 50.) On March 11, 2022, he applied for admission at the Eagle Pass International Bridge at Eagle Pass, Texas. (*Id.*) On inspection, Petitioner did not possess a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Immigration and Nationality Act ("INA"). (ECF No. 12-1 at PageID 56; ECF No. 12-2.) *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). At that time, removal proceedings pursuant to 8 U.S.C. § 1229a were initiated and Petitioner was issued a Notice to Appear ("NTA"). (ECF No. 12-1.) The NTA identifies Petitioner as an "arriving alien," and charges him with being subject to removal as "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document" pursuant to

INA § 212(a)(7)(A)(i)(I). Petitioner was paroled into the United States pending his removal proceedings pursuant to 8 U.S.C. § 1182(d)(5)(A). (ECF No. 12 at PageID 50–51.) Petitioner's parole automatically terminated on March 26, 2022. (ECF No. 13 at PageID 68.) Petitioner was detained on or about December 1, 2025, due to a "violation of compliance from the ATD program." (ECF No. 12 at PageID 50–51.)

On May 11, 2026, a panel of the United States Court of Appeals for the Sixth Circuit held that at least some aliens residing in the interior of the United States are entitled to a bond hearing pending their removal proceedings. *See Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). The Court ordered Respondent to show cause why the Petition should not be granted, including addressing whether Petitioner was entitled to relief based on *Lopez-Campos*. The Government timely filed its response (ECF No. 12) and asserted that *Lopez-Campos* did not control the outcome in this case. According to the Government, Petitioner applied for admission at a point of entry and although he was paroled into the United States, he remains an "arriving alien" subject to mandatory detention pursuant to 8 U.S.C. § 1225. Petitioner filed a reply (ECF No. 13) disputing the Government's interpretation and arguing that he is not properly classified as an "arriving alien."

## JURISDICTION

This Court is authorized to issue a writ of habeas corpus under 28 U.S.C § 2241 when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And in certain circumstances, habeas corpus proceedings under § 2241 are available to aliens who want to challenge their detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Rasul v. Bush*, 542 U.S. 466, 473–84 (2004); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020) (noting that "the historic role of habeas is to secure release from custody"); *Munaf v. Green*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy

for unlawful executive detention."). Because Petitioner alleges that he is being held in violation of the Constitution and the statutory provisions of the Immigration and Nationality Act, i.e., laws of the United States, his claims are properly brought pursuant to § 2241. And as the Court has previously held, neither § 1252(b)(9) nor § 1226(e) bar consideration of his claims. *See Gonzalez v. Ladwig*, No. 2:26-CV-02017-MSN-ATC, 2026 WL 413602, at *2 (W.D. Tenn. Feb. 13, 2026). The Court thus has jurisdiction over the claims in the Petition.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Court has not required other aliens challenging their detention to exhaust their administrative remedies before addressing the merits of their petitions. *See, e.g.*, *Gonzalez*, 2026 WL 413602, at *3. Although the Court has developed doubts about whether that conclusion was correct, it will nevertheless not require Petitioner to exhaust administrative remedies before addressing the merits of his Petition.

## ANALYSIS

Turning to the merits, Petitioner asserts he is entitled to relief because his continued detention without a bond hearing violates the Immigration and Nationality Act and his due process rights. (ECF No. 1 at PageID 21–23.)

### A. Immigration and Nationality Act

Resolution of Petitioner's claim under the Immigration and Nationality Act turns on whether § 1225 or § 1226 applies to Petitioner. Under § 1225, detention is mandatory, but under § 1226, a discretionary bond hearing is available.

Under § 1225(a)(1), two groups of aliens are deemed applicants for admission: (1) those "present in the United States" who have "not been admitted," and (2) those "arriving" in the United States, whether or not at a designated port of arrival. 8 U.S.C. § 1225(a)(1); *Gonzalez*, 2026 WL

413602, at *4 (citing 8 U.S.C. § 1225(a)(1)). Aliens deemed applicants for admission who are inadmissible may be removed pursuant to two alternative procedures in § 1225. 8 U.S.C. §§ 1225(b)(1), (b)(2)(A).

The first is expedited removal "without further hearing or review," which applies to those aliens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," unless they indicate either an intent to apply for asylum or "a credible fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *Thuraissigiam*, 591 U.S. at 110; *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). If found to have a credible fear of persecution, then they receive a standard removal hearing at which their asylum claim receives "full consideration." *Thuraissigiam*, 591 U.S. at 110 (citing 8 C.F.R. § 208.30(f) and 8 U.S.C. § 1225(b)(1)(B)(ii)); *Jennings*, 583 U.S. at 287. Alternatively, applicants for admission who are not subject to expedited removal may be removed in accordance with the standard procedure in § 1229a, which applies to all other aliens "seeking admission" who "the examining immigration officer determines," are "not clearly and beyond a doubt entitled to be admitted into the country." 8 U.S.C. § 1225(b)(2)(A); *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(2)(A)).

Detention is required regardless of which removal procedure in § 1225 applies. *Jennings*, 583 U.S. at 287. However, "applicants for admission may be temporarily released on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)) (citation modified). But such parole is not an admission of the alien. *Id.* Instead, parole "allows the Government to pause the inspection at the border and defer it to a later time without having to detain the alien pending a final admissibility decision, as would otherwise be required." *Blanche v. Lau*, 146 S. Ct. 1981, 1987 (2026) (citing 8 U.S.C. §§ 1225(a), (b)(2)(A) and *Jennings*, 583 U.S. at 300).

"Comparatively, § 1226 applies to noncitizens 'arrested and detained pending a decision on whether the alien is to be removed from the United States.'" *Lopez-Campos*, 175 F.4th at 721 (citing 8 U.S.C. § 1226(a)). Aliens detained under § 1226 may be released "on bond or conditional parole," except for certain aliens "who fall into one of several enumerated categories involving criminal offenses and terrorist activities.'" *Id.* (citing *Jennings*, 583 U.S. at 289) (citation modified).

In *Lopez-Campos*, the Sixth Circuit addressed whether some aliens who were "detained within the interior of the United States," were subject to detention under § 1225(b)(2)(A) or § 1226. 175 F.4th at 720–21. The Sixth Circuit held that § 1226 applied to this group of aliens who "never affirmatively applied for admission," and had resided in the country "without lawful status for years." 175 F.4th at 721. The Sixth Circuit reasoned that these aliens "did not attempt lawful entry into the United States and are actively avoiding being inspected for lawful entry," so they "are not 'seeking admission' and are thus not subject to § 1225(b)(2)(A)'s mandatory detention scheme." *Id.* at 723.

Petitioner in this matter is not similarly situated to the petitioners in *Lopez-Campos*. Petitioner applied for admission at the Eagle Pass International Bridge at Eagle Pass, Texas on March 11, 2022. At that time, he was an "arriving alien," because he was "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. After inspection, he was not admitted to the United States because he did not possess a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. Instead, he was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A). But Petitioner's parole is not "regarded as an admission." 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)). He remained an arriving alien even though he was

paroled into the United States. 8 C.F.R. § 1.2 ("An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked.").

When Petitioner's parole automatically expired on March 26, 2022, he was still an "arriving alien." *Id.*; *see* 8 C.F.R. § 212.5(e)(2)(i) (On termination of alien's parole, "he or she shall be restored to the status that he or she had at the time of parole."). And Petitioner was to "forthwith return or be returned to the custody from which he was paroled." 8 U.S.C. § 1182(d)(5)(A). At the time he was paroled, Petitioner was an arriving alien subject to mandatory detention under § 1225(b)(2)(A).[1] His parole did not change either of those things. He remains an arriving alien subject to mandatory detention under § 1225(b)(2)(A). *See, e.g., Jean v. Bullock*, No. 2:26-CV-02571-BCL-ATC, 2026 WL 1531056, at *2 (W.D. Tenn. May 30, 2026); *Gonzalez Crispin v. Olson*, No. 4:26-CV-308-CHB, 2026 WL 1430506, at *5 (W.D. Ky. May 21, 2026); *Chirinos Chirinos v. Tindell*, No. 3:25-CV-789-CHB, 2026 WL 926941, at *10–13 (W.D. Ky. Apr. 6, 2026); *Rana v. Genalo*, No. 26 CIV. 849 (JPC), 2026 WL 1863815, at *6 (S.D.N.Y. June 29, 2026); *Ajay v. Maldonado*, No. 26-CV-0676 (BMC), 2026 WL 1045420, at *3 (E.D.N.Y. Apr. 17, 2026); *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026).

[1] Petitioner was eligible for expedited removal under § 1225(b)(1) upon arrival because he was an "arriving alien" who was inadmissible under § 1182(a)(7) because he was an immigrant who, at the time of application for admission, was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." However, there is nothing in the record indicating that he was detained for expedited removal at that time or whether a determination was made regarding a credible fear of persecution. Had he initially been placed in expedited removal proceedings that were vacated after a credible fear of persecution finding, then he would be subject to detention under § 1225(b)(1)(B)(ii).

**B. Due Process Rights**

The Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. But those protections do not apply to "an alien seeking initial admission to the United States," because he "requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plascentia*, 459 U.S. 21, 32 (1982). "[T]he Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit; and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139 (internal citations omitted). The Supreme Court has thus repeatedly said, for aliens seeking admission, the rule is that "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Id.* at 139–40.

"This rule would be meaningless if it became inoperative as soon as an arriving alien set foot on U. S. soil." *Id.* And thus, "aliens who arrive at ports of entry—*even those paroled elsewhere in the country for years pending removal*—are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (citing first, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953), then *Leng May Ma v. Barber*, 357 U.S. 185, 188–90 (1958) and *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)) (emphasis added); *Leng May Ma*, 357 U.S. at 190 (1958) ("The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court.").

In *Lopez-Campos*, the Sixth Circuit recognized that *Thuraissigiam* reiterated the "longstanding understanding" that aliens "on the threshold of initial entry" have "only those rights

regarding admission that Congress has provided by statute." 175 F.4th at 733–34 (citing *Thuraissigiam*, 591 U.S. at 140 and *Mezei*, 345 U.S. at 212). The Sixth Circuit nevertheless held that *Thuraissigiam* was distinguishable from the circumstances before it. *Id.* The Sixth Circuit went on to conclude that the rule as reiterated in *Thuraissigiam* did not apply to aliens who have resided in the United States for years after entering the country without inspection at locations other than ports of entry. *Id.* at 734.

In a decision issued before *Lopez-Campos*, the undersigned noted that when Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) in 1996, it sought to eliminate a similar distinction in the INA's statutory provisions because it "created a perverse incentive to enter at an unlawful rather than a lawful location." *Gonzalez*, 2026 WL 413602, at *7 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 755 (N.D. Tex. 2026)); *see Thuraissigiam*, 591 U.S. at 140 (reasoning that treating an alien as if he had "effected an entry" into the country when he was detained 25 yards from the border "would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location" (citations omitted)). But this Court must, and will, faithfully follow and apply *Lopez-Campos*. *See Jean*, 2026 WL 1531056, at *2 (concluding the same "because 'vertical stare decisis is absolute'" (citation omitted)); *Vines v. Welspun Pipes, Inc.*, No. 4:18-CV-00509-BRW, 2020 WL 3062384, at *10 (E.D. Ark. June 9, 2020) (noting that "when the big dog barks, the little dog is to run back under the porch").

*Lopez-Campos*, however, does not entitle Petitioner to relief. Unlike the petitioners in *Lopez-Campos*, Petitioner applied for admission at a port of entry, so he is treated for due process purposes "as if stopped at the border," despite being "paroled elsewhere in the country for years." *Thuraissigiam*, 591 U.S. at 139. Petitioner thus "has only those rights regarding admission that

Congress has provided by statute." *Id.* at 140; *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process . . . ."). And for aliens like Petitioner, Congress has provided statutory rights and procedures in 8 U.S.C. § 1225 and 8 U.S.C. § 1229a. *See Thuraissigiam*, 591 U.S. at 108–11. Because there is nothing in the record to suggest that these statutory processes are not being afforded, Petitioner's due process claim necessarily fails.

## CONCLUSION

As it has said before, the Court is not unsympathetic to the difficulties of Petitioner's circumstances. But the Court is duty-bound to faithfully apply the Constitution and laws of the United States. The Court's decision is simply the fulfillment of that duty.

For the reasons set forth above, the Petition for Writ of Habeas Corpus (ECF No. 1) is **DENIED**. A judgment will be entered accordingly.

**IT IS SO ORDERED**, this 14th day of August, 2026.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE